## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

CYNTHIA ANDERSEN ROLL and
RICHARD ALLEN ROLL,

        Plaintiffs,

v.                               Case No.  3:19-cv-356-J-34MCR

USAA GENERAL INDEMNITY
COMPANY,

        Defendant.

_____/

## <u>REPORT AND RECOMMENDATION</u>[1]

        **THIS CAUSE** is before the Court on USAA General Indemnity Company's

Motion to Dismiss Plaintiffs' Claims for Attorneys' Fees, Costs, and Case

Expenses Under the Equal Access to Justice Act, 28 U.S.C. § 2412(b) Pursuant

to Fed. R. Civ. Pro. 12(b)(6) and Memorandum in Support Thereof ("Motion")

(Doc. 10), and Plaintiffs' response in opposition thereto ("Response") (Doc. 11).

For the reasons stated herein, the undersigned **RECOMMENDS** that the Motion

be **GRANTED**.

---

[1] "Within 14 days after being served with a copy of [a report and recommendation on a
dispositive motion], a party may serve and file specific written objections to the
proposed findings and recommendations."  Fed.R.Civ.P. 72(b)(2).  "A party may
respond to another party's objections within 14 days after being served with a copy."  *Id.*
A party's failure to serve and file specific objections to the proposed findings and
recommendations alters the scope of review by the District Judge and the United States
Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge
anything to which no specific objection was made.  *See* Fed.R.Civ.P. 72(b)(3); 28
U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; M.D. Fla. R. 6.02.

## I.   Background

Defendant USAA is a Write-Your-Own ("WYO") insurance company participating in the National Flood Insurance Program ("NFIP"), established by the National Flood Insurance Act of 1968 ("NFIA"), 42 U.S.C. § 4001, *et seq.* The NFIP is administered by the Administrator of the Federal Emergency Management Agency ("FEMA").   *See id.* §§ 4001, 4011(a).   "The NFIP, through the cooperative efforts of the Federal Government and private insurance industry, makes Standard Flood Insurance Policies ("SFIP") available to individuals who seek protection."   *Chatman v. Wright Nat'l Flood Ins. Co.*, No. 3:17-cv-00125-HES-PDB, 2017 WL 3730558, at *1 (M.D. Fla. June 21, 2017). These SFIPs can be purchased directly from FEMA or from a WYO insurance carrier, such as Defendant.   *Id.*

Plaintiffs, Cynthia and Richard Roll, purchased a SFIP from Defendant covering Plaintiffs' property located in Orange Park, Florida.   (Doc. 1, ¶¶ 4-5.) On September 11, 2017, while the SFIP was in effect, Plaintiffs' insured property suffered damages resulting from "storm surge, tidal water and rain associated with Hurricane Irma."   (*Id.* ¶ 7.)   On March 27, 2019, Plaintiffs filed their Complaint alleging that Defendant breached the SFIP by failing or refusing "to pay the full amount due under the policy and ha[d] otherwise failed to comply with the terms and provisions of the policy."   (*Id.* ¶ 11.)   In the "Wherefore" clause of the Complaint requesting relief, Plaintiffs demand, *inter alia*, "attorney fees,

costs and case expenses incurred in filing and prosecuting this action payable under the Equal Access to [Justice] Act, 28 U.S.C. § 2412."  (*Id.* at 5.)

Defendant now moves this Court to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs' request for attorney's fees, costs, and case expenses under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. 2412, contending that such remedies are not recoverable as a matter of law.[2] (Doc. 10.)  Defendant argues that it is a private WYO company participating in the NFIP, not the United States or an agency or official of the United States as required under the EAJA.  (*Id.* at 1-2.)  Plaintiffs, on the other hand, argue that

---

[2] Although Defendant brings its Motion pursuant to Rule 12(b)(6), the undersigned finds that Rule 12(f) is the proper vehicle for addressing Plaintiffs' request for attorney's fees, costs, and expenses under the EAJA.  *See Arevalo v. Am. Bankers Ins. Co. of Fla.*, No. 2:19-cv-159-FtM-99UAM, 2019 WL 2476644, *3 (M.D. Fla. June 13, 2019) ("Although labeled a Rule 12(b)(6) Motion, the Motion does not attack the sufficiency of the Complaint.  Rather, the requested relief is more akin to a motion to strike the request for attorney's fees and costs under Federal Rule 12(f).").  Courts, including this Court, have often applied Rule 12(f) to strike a prayer for relief that is not available as a matter of law.  *See, e.g.*, *Schmidt v. C.R. Bard, Inc.*, No. 6:14-cv-62, 2014 WL 5149175, at *7 (S.D. Ga. Oct. 14, 2014) (collecting cases in which the courts determined that it was appropriate to strike a prayer for relief unavailable as a matter of law); *J.C. by & through M.C. v. Sch. Bd. of St. Johns Cty., Fla.*, No. 3:14-cv-1225-J-39JBT, 2015 WL 13735453, at *6 (M.D. Fla. June 11, 2015) (report and recommendation adopted by 2015 WL 13735452 (M.D. Fla. Sept. 24, 2015)) (noting that "even if Plaintiff's claim for administrative attorneys' fees was improper, the appropriate court action would be striking that prayer for relief, not dismissing the entire case"); *Hodge v. Orlando Utils. Comm'n*, No. 6:09-cv-1059-Orl-19DAB, 2009 WL 4042930, at *4 (M.D. Fla. Nov. 23, 2009) ("However, a prayer for relief not available under the applicable law is properly subject to a motion to strike.") (citing 2 Moore's Federal Practice ¶ 12.37[3] (3d ed. 2009) ("[M]otions to strike requests for certain types of relief, such as punitive or compensatory damages, are generally granted if such relief is not recoverable under the applicable law.")); *Stapleton v. State Farm Fire & Cas. Co.*, 11 F. Supp. 2d 1344, 1347 (M.D. Fla. 1998) (striking plaintiff's demand for attorney's fees under state law because they were impermissible under the NFIA and bore "little relation to a cause of action under the NFIA").  Thus, the undersigned construes Defendant's Motion as a Motion to Strike.

the EAJA applies to Defendant, even though it is not a federal agency, because it is a "fiscal agent" of FEMA, a federal agency and the "real party in interest," and Defendant is named in the Complaint only as a formality imposed by regulation. (Doc. 11.)  On October 7, 2019, the Honorable Marcia Morales Howard, United States District Judge, referred the matter to the undersigned for preparation of a report and recommendation regarding an appropriate resolution of the Motion. (Doc. 20.)  The matter is ripe for review.

## II.    Standard

Under Rule 12(f) of the Federal Rules of Civil Procedure, a court may, on its own motion or a party's motion, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed.R.Civ.P. 12(f).  However, "motions [to strike] under Rule 12(f) are viewed with disfavor and are infrequently granted" even when they are "technically appropriate and well-founded" because striking is "a drastic remedy."  *Harvey v. Lake Buena Vista Resort, LLC*, 568 F. Supp. 2d 1354, 1359 (M.D. Fla. 2008); *see also Augustus v. Bd. of Pub. Instruction of Escambia Cty.*, 306 F.2d 862, 868 (5th Cir. 1962).[3]

To prevail on a motion to strike, the movant must show that "the allegations being challenged are so unrelated to plaintiff's claims as to be unworthy of any consideration . . . and that their presence in the pleading

---

[3] In the case of *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

throughout the proceeding will be prejudicial to the moving party."  *Harvey*, 568 F. Supp. 2d at 1359.  *See also Augustus*, 306 F.2d at 868 ("The motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy."); *Nankivil v. Lockheed Martin Corp.*, 216 F.R.D. 689, 691 (M.D. Fla. 2003), *aff'd*, 87 F. App'x 713 (11th Cir. 2003) ("A 'court will not exercise its discretion under the rule to strike a pleading unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party.'").

"A disputed question of fact cannot be decided on [a] motion to strike." *Augustus*, 306 F.2d at 868; *see also Microsoft Corp. v. Jesse's Comp. & Repair, Inc.*, 211 F.R.D. 681, 683 (M.D. Fla. 2002) ("In evaluating a motion to strike, 'the court must treat all well pleaded facts as admitted and cannot consider matters beyond the pleadings.'").  Further, "when there is no showing of prejudicial harm to the moving party, the courts generally are not willing to determine disputed and substantial questions of law upon a motion to strike."  *Augustus*, 306 F.2d at 868.  "[T]hese questions quite properly are viewed as determinable only after discovery and a hearing on the merits . . . ."  *Harvey*, 568 F. Supp. 2d at 1360.

## III.     Statutory and Regulatory Framework

### A.     The National Flood Insurance Program

Congress created the NFIP "to make flood insurance available on reasonable terms and to reduce fiscal pressure on federal flood relief efforts."

*See Ekhlassi v. Nat'l Lloyds Ins. Co.*, 926 F.3d 130, 134 (5th Cir. 2019), *cert.*

*denied*, ---S.Ct.---, 2020 WL 129559 (2020) (quoting *Campo v. Allstate Ins. Co.*,

562 F.3d 751, 754 (5th Cir. 2009)).  In creating the NFIP, Congress provided the

program's administrator with two ways to execute the program:

> The first method, the "Industry Program," allows a pool of private
> insurers to underwrite flood insurance with financial backing from the
> government.  The "Government Program," the second option, allows
> the government to run the NFIP itself—offering federally
> underwritten policies—with the potential for administrative
> assistance from private insurers.  In 1977, the Secretary of Housing
> and Urban Development, who ran the NFIP at the time (it has since
> been taken over by [FEMA]), decided that the Industry Program was
> unworkable and ended it.  He then implemented the Government
> Program, which has continued to the present.

*Battle v. Seibels Bruce Ins. Co.*, 288 F.3d 596, 598-99 (4th Cir. 2002) (quoting

*Downey v. State Farm Fire & Cas. Co.*, 266 F.3d 675, 678-79 (7th Cir. 2001))

(internal citations and alterations omitted).  The Administrator of FEMA is

authorized under the statute to establish and carry out the NFIP.  42 U.S.C. §

4011(a).  Specifically, the Administrator of FEMA is authorized to "provide by

regulation for general terms and conditions of insurability which shall be

applicable to properties eligible for flood insurance coverage" under the NFIP, as

well as "the general method or methods by which proved and approved claims

for losses may be adjusted and paid" for damage or loss to property covered

under the NFIP.  *See id.* §§ 4013, 4019.  Moreover:

> The [Administrator] of FEMA operates the Government Program of
> the NFIP "through the facilities of the Federal Government . . ." 42
> U.S.C. § 4071(a). In so doing, the [Administrator] of FEMA is
> authorized to use private insurance companies "*as fiscal agents of*

the United States," *id.* at § 4071(a)(1), and to enter into[,] with insurance companies[,] any necessary "contracts, agreements, or other appropriate arrangements," *id.* at § 4081(a).

*Battle*, 288 F.3d at 599 (emphasis added).

In 1983, the Director of FEMA created the WYO Program to help administer the NFIP by allowing private insurers to provide SFIPs to the public and administer claims under the Government Program. *Id.*; *see also* 42 U.S.C. §§ 4071(a)(1), 4081(a); 44 C.F.R. § 62.23. Under the WYO Program, WYO insurance carriers issue the SFIPs under their own name and "under their own property business lines of insurance, pursuant to their customary business practices." 42 U.S.C. § 4071(a)(1); 44 C.F.R. § 62.23(a). Under the regulations, "[a] WYO Company issuing flood insurance coverage shall arrange for the adjustment, settlement, payment and defense of all claims arising from policies of flood insurance it issues under the [NFIP], based upon the terms and conditions of the [SFIP]." 44 C.F.R. § 62.23(d). The regulations also provide that:

> The Federal Insurance Administrator will enter into arrangements with such companies whereby *the Federal Government will be* a *guarantor* in which the *primary relationship between the WYO Company and the Federal Government will be one of a fiduciary nature,* i.e., *to assure that any taxpayer funds are accounted for and appropriately expended.*

*Id.* § 62.23(f) (emphasis added). Pursuant to the regulations, a WYO insurer acts "as a fiscal agent of the Federal Government, but not as its general agent." *Id.* § 62.23(g). Additionally, "WYO Companies are solely responsible for their obligations to their insured under any [SFIPs]*, such that the Federal Government*

*is not a proper party defendant in any lawsuit arising out of such policies.*"[4]  *Id.* (emphasis added).

In order to facilitate the adjustment of SFIP claims by WYO companies, the regulations provide that "WYO companies will adjust claims in accordance with general company standards, guided by NFIP [c]laims manuals" and "claim adjustments shall be binding upon the FIA."  *Id.* § 62.23(i)(1).  Moreover, the regulations provide that WYO companies bear the responsibility of defending claims "and defense cost will be part of the unallocated or allocated claim expense allowance, depending on whether a staff counsel or an outside attorney handles the defense of the matter."  *Id.* § 62.23(i)(6).  WYO Companies must also report claims in litigation "to FIA upon joinder of issue and FIA may inquire [into] and be advised of the disposition of such litigation."  *Id.*  In addition, "[t]he WYO Company's claim examiners and managers will supervise the adjustment of flood insurance claims by staff and independent claims adjusters."  *Id.* § 62.23(i)(10).

---

[4] The regulations specifically provide that:

Upon the disallowance by the Federal Insurance Administration, a participating [WYO] Company, or the servicing agent of any claim on grounds other than failure to file a proof of loss, or upon the refusal of the claimant to accept the amount allowed upon any claim after appraisal pursuant to policy provisions, the claimant . . . may, pursuant to 42 U.S.C. [§] 4072, institute an action on such claim against the insurer only in the U.S. District Court for the district in which the insured property or the major portion thereof shall have been situated, without regard to the amount in controversy.

44 C.F.R. § 62.22.

Pursuant to FEMA regulations, "all policies issued under the NFIP must be issued using the terms and conditions of the Standard Flood Insurance Policy (SFIP) found in 44 C.F.R. Part 61, Appendix A." *Battle*, 288 F.3d at 599 (citing 44 C.F.R. §§ 61.4(b), 61.13(d), (e), 62.23(c)). As such, all flood insurance policies issued by WYO companies must "mirror the terms and conditions of the SFIP, which terms and conditions cannot be varied or waived other than by express written consent of the Federal Insurance Administrator." *Id.* (citing 44C.F.R §§ 61.4(b), 61.13(d)-(e), 62.23(c)-(d)). SFIPs can be purchased either from FEMA or from a WYO carrier, and "[a]t least historically, if not today as well, WYO carriers write far more policies than does FEMA." *Ekhlassi*, 926 F.3d at 135 (quoting *C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co.*, 386 F.3d 263, 267 (3d Cir. 2004)).

SFIPs offered by WYO companies are underwritten by the United States National Treasury and SFIP payments to the insured come from the federal treasury. *See* 42 U.S.C. §§ 4071(a)(1), 4081(a); *see also Wright v. Allstate Ins. Co.*, 415 F.3d 384, 386 (5th Cir. 2005). After deducting fees and costs, premiums collected by WYO companies "must be deposited in the National Flood Insurance Fund in the United States Treasury." *Battle*, 288 F.3d at 599 (citing 42 U.S.C. § 4017(d); 44 C.F.R. Pt. 62, App. A, Arts. II(E) & VII(B)). "In short, premiums collected on policies written by WYO Companies do not belong to those companies." *Id.* at 600 (citing *Newton v. Capital Assurance Co.*, 245 F.3d 1306, 1311 (11th Cir. 2001)). Therefore, claims paid under SFIPs "are a direct

charge on the United States Treasury."  *Id.* (citing *Newton* at 1311; 44 C.F.R. §

62.23(f)).  In sum, under this framework:

> [T]he federal government underwrites the policies and private WYO
> carriers perform significant administrative functions including
> "arrang[ing] for the adjustment, settlement, payment and defense of
> all claims arising from the policies."  . . . Although WYO carriers play
> a large role, the government ultimately pays a WYO carrier's claims.
> When claimants sue their WYO carriers for payment of a claim,
> carriers bear the defense costs, which are considered "part of the ...
> claim expense allowance"; FEMA reimburses these costs. Yet, if
> "litigation is grounded in actions by the [WYO] Company that are
> significantly outside the scope of this Arrangement, and/or involves
> issues of agent negligence," then such costs will not be reimbursable
> to the WYO carrier.

*Ekhlassi*, 926 F.3d at 134 (quoting *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754

(5th Cir. 2009)).

### B.    EAJA

The EAJA provides, in relevant part:

> (a)(1) Except as otherwise specifically provided by statute, a
> judgment for costs, as enumerated in section 1920 of this title, but
> not including the fees and expenses of attorneys, may be awarded
> to the prevailing party in any civil action brought by or against *the
> United States or any agency or any official of the United States
> acting in his or her official capacity* in any court having jurisdiction of
> such action. A judgment for costs when taxed against the United
> States shall, in an amount established by statute, court rule, or
> order, be limited to reimbursing in whole or in part the prevailing
> party for the costs incurred by such party in the litigation.
> . . .
>
> (b) Unless expressly prohibited by statute, a court may award
> reasonable fees and expenses of attorneys, in addition to the costs
> which may be awarded pursuant to subsection (a), to the prevailing
> party in any civil action *brought by or against the United States or
> any agency or any official of the United States acting in his or her
> official capacity* in any court having jurisdiction of such action. *The*

> *United States* shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

28 U.S.C. § 2412(a)-(b) (emphasis added).  Moreover, the EAJA sets forth the following requirements for the award of fees:

> (d)(1)(A) Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, *brought by or against the United States* in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

*Id.* § 2412(d)(1)(A).  The EAJA defines the "United States" to include "any agency and any official of the United States acting in his or her official capacity."  *Id.* § 2412(d)(2)(C).  Congress defined the term "agency" as used in Title 28 as follows: "The term 'agency' includes any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest, unless the context shows that such term was intended to be used in a more limited sense." *Id.* § 451.

"Congress enacted the EAJA to diminish the costs of litigating against the government."  *Abbs v. Principi*, 237 F.3d 1342, 1349 (Fed. Cir. 2001) (citing H.R. Rep. No. 1418, at 12 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4984, 4991 ("The EAJA's fee-shifting mechanism is 'an instrument for curbing excessive regulation

and the unreasonable exercise of Government authority.'")).  "A primary purpose in enacting the EAJA . . . was to remove obstacles of litigation expenses, including attorneys' fees, so that litigants may challenge unreasonable *governmental action* and vindicate their rights in court."  *Id.* (internal citations omitted) (emphasis in the original).  "The clearly stated objective of the EAJA is to eliminate financial disincentives for those who would defend against unjustified governmental actions and thereby to deter the unreasonable exercise of government authority."  *Ardestani v. I.N.S.*, 502 U.S. 129, 138 (1991) (citations omitted).

## IV.  Discussion

Numerous courts, including this Court, have previously considered and consistently rejected requests for attorney's fees and costs under the EAJA as impermissible in cases against private WYO insurance companies participating in the NFIP.  *See, e.g.*, *Dwyer v. Fidelity Nat'l Prop. & Cas. Ins. Co.*, 565 F.3d 284, 290 (5th Cir. 2009) ("[S]erving as a fiscal agent and a participant in a heavily regulated federal program did not transform Fidelity into a federal agency under the EAJA."); *Island Club Condo., Inc. v. Wright Nat'l Flood Ins. Co.*, No. 4:18-cv-10303-JLK, 2019 WL 4694563 (S.D. Fla. May 9, 2019) (dismissing insured's claim for attorney's fees under the EAJA and finding that WYO carriers' role as "'fiscal agents,' without more, [did] not convert WYO insurers into official government agencies"); *Chatman*, 2017 WL 3730558, at *2 (dismissing insured's claim for attorney's fees under the EAJA because the defendant, a WYO

12

insurance carrier, was not acting as the United States, an agency thereof, an "independent establishment" or a "corporation in which the United States has a proprietary interest");  *Porter v. Hartford Fire Ins. Co.*, No. 3:08cv301/MCR/EMT, 2010 WL 11640345, at *5 (N.D. Fla. Sept. 17, 2010) ("Even if his breach of contract claim were not time-barred, the plaintiff would be precluded from recovering attorneys' fees under the EAJA because Hartford is neither the United States nor any agency or official thereof.") (citing *Dwyer*, 565 F.3d at 289-90); *Dickerson v. State Farm Fire & Cas. Co.*, No. CIV.A.06-5181, 2007 WL 1537631, at *4 (E.D. La. May 23, 2007) ("However, while State Farm is a WYO carrier participating in the NFIP as fiscal agent for the United States, it is not an agency of the United States as required by the EAJA.").  *But see Arevalo*, 2019 WL 2476644, at *4 (denying WYO company's motion to strike insured's request for attorney's fees and costs under the EAJA and concluding that "the determining factor is not so much whether [the WYO company] is an 'agency' of the United States under the Act" but rather "it seems to matter more whether the government is the source of the funds or who would pay an award of attorney's fees").

In *Dwyer*, the Fifth Circuit vacated a district court's award of attorney's fees under the EAJA, finding that the EAJA did not apply to a WYO carrier as it was not an agency of the United States, and reasoned that:

> The district court correctly noted that the EAJA would apply to a suit against FEMA.  *In re Estate of Lee*, 812 F.2d 253 (5th Cir. 1987). The district court might be correct in concluding that allowing suit

13

against private insurers is a mere formality imposed by regulation, but regardless, the EAJA must be applied according to its terms. This court does not second-guess Congress's policy decisions. *Harbison v. Bell*, 556 U.S. 180, 129 S.Ct. 1481, 173 L.Ed.2d 347 (2009) (Thomas, J., concurring).

565 F.3d at 290.  The *Dwyer* court concluded that its decision was consistent with decisions reached by several district courts holding that a WYO company was not the United States or an agency of the United States, thus rendering the EAJA inapplicable.  *Id.* (citations omitted).

Similarly, in *Chatman*, this Court also held that:

Based on the applicable definition of "agency," contained in 28 U.S.C. § 451, this Court agrees that Wright was not acting as the United States or as an agency thereof.  A WYO insurance company "cannot be characterized as a department, commission, administration, authority, board, or bureau of the United States" as required by the "agency" definition.  *Dwyer*, 565 F.3d at 289.  Nor is a WYO insurance company an "independent establishment" or a "corporation in which the United States has a proprietary interest." *Id.*  Wright's motion to dismiss the claim for attorney's fees pursuant to the EAJA must be granted.

2017 WL 3730558, at *2.  Based on the plain language of the EAJA, and the reasoning in *Chatman* and *Dwyer*, as well as a long line of cases holding that the EAJA does not apply to suits against WYO companies, the undersigned finds that the EAJA does not apply to Plaintiffs' suit against Defendant, a private WYO insurance company participating in the NFIP.  Thus, Plaintiff's request for attorney's fees, costs, and expenses under the EAJA should be stricken as impermissible as a matter of law.

However, the undersigned is compelled to address the parties' arguments in light of *Arevalo v. American Bankers Ins. Co. of Florida*, a recent opinion issued by a different division in this District, rejecting the holding in *Dwyer* and similar cases issued in this Court.[5]  *Arevalo*, 2019 WL 2476644, *1.  While Defendant argues that there is "no express or implied Congressional authorization for an NFIP participant to recover attorney's fees against a WYO company under the EAJA," (Doc. 10 at 6-9), Plaintiff argues that since the EAJA applies to FEMA (indisputably a federal agency), and a lawsuit against Defendant is the "functional equivalent" of a suit against FEMA, then Plaintiff should be entitled to attorney's fees, costs, and expenses under the EAJA (Doc. 11 at 4-8).  In support of their argument, Plaintiffs posit that:

> [W]hen considering whether [the] EAJA applies to claims under the NFIP, the focus should be on who is the real party in interest rather than whether the WYO is an 'agency' of the United States under the EAJA statute.  The Court should consider who is in control of the litigation (which is causing fees to be incurred) rather than who is named as the Defendant especially under the existing circumstances where USAA would not be named as a Defendant but for regulations requiring that the WYO rather than FEMA be named in the lawsuit.

(*Id.* at 6.)  Plaintiffs argue that *Dwyer*, and similar cases, are inconsistent with caselaw supporting the proposition that "legal rights, regulations and duties which apply to FEMA as a governmental agency should also apply to the WYO

---

[5]  Recently, in *Shapiro v. Wright Nat'l Flood Ins. Co.*, No. 2:19-cv-679-FtM-38MRM, 2020 WL 224538, at *4 (M.D. Fla. Jan. 15, 2020), the court issued a similar opinion as in *Arevalo*.  Mr. Bearman, Plaintiffs' former counsel in this case, also represented the plaintiffs in *Arevalo* and *Shapiro*.

program carriers," and with the "expressed intent of FEMA that the same legal

principles, regulations and duties which apply to SFIPs purchased from FEMA

should likewise apply to SFIPs purchased from a WYO."[6]  (*Id.* at 6-8.)  Plaintiffs

argue that since suits involving SFIPs purchased from FEMA would be subject to

the EAJA, suits involving SFIPs purchased from WYO carriers should also be

subject to the EAJA:

> Under *Dwyer*, and other decisions based on the 'agency' theory,
> even though each policyholder would be in the same legal position
> at the time suit was filed, these policyholders would have different
> benefits based solely on the source of the policy.  One group would
> be entitled to greater benefits than the other.  It is difficult to
> understand how Congress would have intended such a result.  On
> the contrary, it seems more reasonable that Congress, like FEMA,
> intended that these policyholders be treated equally.

(*Id.* at 9.)

Plaintiffs also argue that because USAA is named as a Defendant

pursuant to regulations only, and FEMA is the source of any funds due to the

Plaintiffs, FEMA is the real party in interest.  (*Id.* at 9-12.)  According to Plaintiffs:

> [T]he only circuit which has considered the issue involved in this
> action is the Fifth Circuit in the *Dwyer* case.  Since there is no
> Eleventh Circuit ruling, the *Arevalo* court looked to cases decided by
> the Eleventh Circuit involving analogous issues for guidance.  The
> analogous issue in *Newton* was whether a legal principle or
> regulation (in that case, the no-interest rule) which is applicable to

---

[6] Plaintiffs cite to the statement of intent from FEMA "relating to a 2000 amendment to
Article IX of the SFIP" as follows:
> The Administrator intends that the same benefits should be available to
> insureds wherever the insured property is located, or whether the policy is
> purchased from a WYO insurance company or from the Federal
> Government.  Thus, there is a need for uniformity in the interpretation of
> and standards applicable to the policies and their administration. . . .

(Doc. 11 at 8.)

> FEMA as a government agency, should apply to a WYO since the
> WYO is not a governmental entity or agency.  This is the exact
> issue involved in this case, namely, whether a legal principle or regulation
> (in this case [the] EAJA), which is applicable to FEMA as a
> government agency, applies to USAA since USAA is not a
> governmental entity or agency.

(*Id.* at 11.)  Plaintiffs urge the Court to find that the EAJA applies to WYO

companies, lest a situation arise "where policyholders who purchase their SFIP

from a WYO will be treated differently from those who purchase their policy from

FEMA and FEMA policyholders will enjoy greater benefits than their WYO

counterparts." (*Id.*)  Plaintiffs also contend that if the Court grants Defendant's

motion, "then policyholders will have no incentive or reason to ever buy or renew

their policies with USAA (or any WYO) when they can purchase directly from

FEMA and be entitled to recover attorney[s'] fees, case expenses and costs

under EAJA," arguing that this result could cripple the WYO program and

overburden FEMA.  (*Id.* at 11-12.)

However, the EAJA is an independent statute with express and

unambiguous terms, which "renders the United States liable for attorney's fees

for which it would not otherwise be liable, and thus amounts to a partial waiver of

sovereign immunity. Any such waiver must be strictly construed in favor of the

United States." *Ardestani*, 502 U.S. at 137.  The undersigned is not persuaded

by Plaintiffs' arguments that the EAJA applies to WYO companies, such as

Defendant, because FEMA is the "real party in interest" and "a suit against a

17

WYO Program carrier is the *functional equivalent* of a suit against FEMA."[7]  (*See generally* Doc. 11 (emphasis added).)

The undersigned is also unpersuaded by the reasoning in *Arevalo*.  As in this case, in *Arevalo*, an insured brought a breach of contract claim against a WYO company involving an SFIP and requested attorney's fees, costs, and expenses under the EAJA, which the defendant WYO carrier moved to dismiss.[8] 2019 WL 2476644, at *1.  Although the court recognized that the Eleventh Circuit had not considered the precise issues raised in that motion, it noted that in *Newton*, the Eleventh Circuit had "considered an analogous issue of prejudgment interest awards."  *Id.* at 2 (citing *Newton*, 245 F.3d at 1309).  The *Arevalo* court noted that in *Newton*:

> [T]he Eleventh Circuit cited *In re Van Holt*[, 163 F.3d 161, 165 (3d Cir. 1998),] for the proposition that for jurisdictional purposes a suit against a WYO company is the "functional equivalent" of a suit against FEMA.  . . . The *Newton* case involved whether prejudgment interest awards (in that case awarded after a bench trial) in suits against WYO companies selling federally-sponsored SFIP policies violate the "no-interest rule" – a sovereign immunity principle that the United States is immune from an interest award in the absence of express congressional consent to the award. . . . The court held that the no-interest rule prohibits the award of prejudgment interest against WYO companies because the regulations detailing the financial relationship between FEMA and WYO companies establish that the interest charges against WYO companies are in reality

---

[7] Plaintiffs "do not contend that WYOs are governmental 'agencies' as the term is defined by the EAJA."  (Doc. 11 at 5-6.)  Instead, they argue that "in considering whether [the] EAJA applies to claims under the NFIP, the focus should be on who is the real party in interest rather than whether the WYO is an 'agency' of the United States under the EAJA statute."  (*Id.* at 6.)

[8] As noted *supra*, the *Arevalo* court construed the Rule 12(b)(6) motion to dismiss as a Rule 12(f) motion to strike.

"direct charges against FEMA."

2019 WL 2476644, at *2 (internal citations omitted).

The court also noted that in *Newton*, the Eleventh Circuit considered the

"functionary status" of the WYO companies in relation to FEMA as follows:

> Under the statute, WYO companies act as the "fiscal agents of the
> United States," 42 U.S.C. § 4071(a)(1); *see also* 44 C.F.R. § 62.23(f)
> (characterizing the relationship between the federal government and
> WYO companies as "one of a fiduciary nature" and intended to
> "assure that any taxpayer funds are accounted for and appropriately
> expended"). WYO companies may not alter the terms of SFIPs, or
> insert flood coverage into other policies. 44 C.F.R. § 62.23(c), (h)(6).
> Finally, they must adjust claims under NFIP guidelines. *Id.* §
> 62.23(i)(1).
>
> Defendant persuades us with these points — FEMA's inevitable
> liability for claims and its substantial administrative oversight — to
> join our fellow circuits in concluding that *the line between a WYO
> company and FEMA is too thin to matter for the purposes of federal
> immunities such as the no-interest rule*.

*Arevalo*, 2019 WL 2476644, at *2-3 (quoting *Newton*, 245 F.3d at 1311)

(emphasis added).  The court recognized that although WYO companies, rather

than FEMA are initially responsible for the "adjustment, settlement, payment, and

defense" of claims on their policies, "[a] WYO company choosing to defend

against a claim must . . . seek reimbursement for its costs rather than merely

handing the case over to FEMA."  *Id.* at 3 (internal citations omitted).  The court

also noted that "[r]eimbursement may be limited . . . if a WYO company fails to

meet certain documentation requirements."  *Id.* (internal citations omitted).

Based on the principles and regulations discussed in *Newton*, the *Arevalo*

court concluded that "the determining factor is not so much whether [the WYO

company] is an 'agency' of the United States under the Act," but "[r]ather, it

seems to matter more whether the government is the source of the funds or who

would pay an award of attorney's fees."  *Id.* at 4.  In denying the WYO company's

motion to strike the EAJA request for relief, the court reasoned that:

> Payment of attorney's fees may be a direct charge on federal funds
> if FEMA approves American Banker's [sic] request for
> reimbursement of the attorney's fees incurred defending this NFIP
> litigation.  This is of course assuming that American Bankers seeks
> reimbursement for its defense costs from FEMA and otherwise has
> an arrangement with FEMA whereby it is entitled to reimbursement.
> Either way, it is at least plausible at this point in the litigation that
> attorney's fees may be paid from federal funds by FEMA.

*Id.*

Defendant anticipated that Plaintiffs would rely on *Arevalo* and

preemptively argued it was neither controlling nor applicable.  (Doc. 10 at 9.)

Defendant specifically argued that: (1) "the *Arevalo* Opinion is an unpublished

interlocutory ruling issued by another division of this Court on June 13, 2019 and

is not final"; (2) "the *Arevalo* Court applied the wrong standard of review when it

improperly converted a Rule 12(b)(6) motion into a Rule 12(f) motion *sua*

*sponte*"; and (3) *Arevalo* misconstrued the holding in *Newton*, concluding that

WYO companies are immune from interest-claims, "not that either FEMA or the

United States were 'the real party in interest' such that WYO companies should

be treated synonymously with federal agencies."  (Doc. 10 at 9-12.)  The

undersigned finds the first point to be moot as the defendant in *Arevalo* did not

appeal or otherwise challenge the court's opinion, and the second point to be unpersuasive, as discussed *supra*.

However, the undersigned agrees with Defendant that *Arevalo* goes too far in extrapolating the narrow holding and reasoning in *Newton* to create a new standard for determining whether EAJA relief is available in a suit against a private WYO company. Other than providing a cursory overview of the EAJA provisions, the *Arevalo* court did not analyze or consider the statutory framework or purpose of the EAJA, or the definitions under 28 U.S.C. § 451, in formulating its new standard. In *Island Club Condominium v. Wright National Flood Insurance Company*, the court recognized that just because a WYO insurer acts as a fiscal agent of the United States, that does not transform the WYO company into a federal agency for purposes of the EAJA. *Island Club*, 2019 WL 4694563, at *1; *see also Scott v. Fed. Reserve Bank of Kansas City*, 406 F.3d 532, 534-36 (8th Cir. 2005) (finding that the Federal Reserve Bank of Kansas City, a fiscal agent and depository of the United States, was not a federal agency as defined in 28 U.S.C. § 451, noting that "it is possible to be a fiscal agent or instrumentality of the government without being a federal agency," and finding that, based on the *Hoag* factors,[9] the Bank was not a federal agency for purposes of Fed.R.App.P. 4).

---

[9] In *In re Hoag Ranches*, the Ninth Circuit combined several factors considered by various courts to "address the question of whether a party to an action is an 'agency of the United States government.'" 846 F.2d 1225, 1227 (9th Cir. 1988). The *Hoag* factors outlined by the Ninth Circuit include:

Notably, as some courts have observed, the "EAJA plainly states that it applies only to the United States, a federal agency, or a federal official acting in his or her official capacity. The act does not provide for an award against a private entity that contracts with the government pursuant to a federal program." *Oster v. Bowen*, 682 F. Supp. 853, 856–57 (E.D. Va. 1988), appeal dismissed 859 F.2d 150, *cert. denied*, 489 U.S. 1019 (1989).  In *Oster*, the court held that

---

> (1) the extent to which the alleged agency performs a governmental function; (2) the scope of government involvement in the organization's management; (3) whether its operations are financed by the government; (4) whether persons other than the government have a proprietary interest in the alleged agency and whether the government's interest is merely custodial or incidental; (5) whether the organization is referred to as an agency in other statutes; and (6) whether the organization is treated as an arm of the government for other purposes, such as amenability to suit under the Federal Tort Claims Act.

*Id.* at 1227–28. The issue in *Hoag* was whether Production Credit Agencies (PCAs) were government agencies or private entities for the purpose of applying Federal Rule of Appellate Procedure 4(a).  *Id.* at 1226-27.

The court concluded that PCAs were not "government agencies within the meaning of Rule 4(a)(1)" given their history and current status, even though some factors weighed in favor of finding agency status.  *Id.* at 1228.  The court acknowledged that the PCAs were "for some purposes, arms of the government," and that the court itself had "found that PCA's [sic] [were] immune from punitive damages based on their status as federal instrumentalities," but determined that the balance tipped in favor of treating PCAs as private entities.  *Id.* at 1228-29.  The court also noted that the government had implemented various changes suggesting that PCAS were not government agencies, including: withdrawing its management of PCA operations; taking steps to establish the PCAs as private entities; and changing the role of the Farm Credit Administration from supervisor to arms-length regulator.  *Id.* at 1229.  The court concluded that PCAs were privately owned, organized, and operated and that the government had no proprietary interest in them.  *Id.*

The court also pointed to other factors supporting its conclusion, such as PCAs: (1) not being "referred to as agencies in either Title 12 or the legislative history"; (2) having "no greater access to federal courts than . . . other private corporations"; (3) being "represented by private, rather than government counsel" in court; and (4) noting that "Federal Land Banks, which are comparable to PCAs in many ways, are not considered government agencies."  *Id.*

the Medical Society of Virginia Review Organization ("MSVRO"), "a peer review

organization . . . acting under contract with the defendant Secretary of Health and

Human Services" and "obligated by the contract to abide by the program

directives issued by the Secretary and the defendant Inspector General of Health

and Human Services," was not part of the federal government for EAJA

purposes.  *Id.* at 854-57.  The *Oster* court noted that:

> Cases involving the Federal Tort Claims Act and the Freedom of
> Information Act have discussed the characteristics of a "federal
> agency."  In *United States v. Orleans,* 425 U.S. 807 . . . (1976), the
> Supreme Court held that a community action agency funded under
> the Economic Opportunity Act was not a federal agency under the
> FTCA.  The Court, in reaching its decision, noted that "a critical
> element in distinguishing an agency from a contractor is the power of
> the federal government 'to control the detailed physical performance
> of the contractor'."  425 U.S. at 814 . . . (quoting *Logue v. United
> States,* 412 U.S. 521, 528 . . . (1973)).  MSVRO is an independent
> legal entity which contracts with the federal government and whose
> day-to-day operations are supervised by private employees paid by
> MSVRO.
> . . .
> MSVRO is simply not a part of the federal government in the form of
> an agency. It is rather a private corporation without the enormous
> litigation resources available to the United States.  *See
> Environmental Defense Fund, Inc. v. Watt,* 722 F.2d 1081, 1086 (2d
> Cir.1983). Therefore, fees may not be awarded against MSVRO
> under the EAJA.

*Id.* at 856-57; *see also* Dwyer, 565 F.3d at 289 ("In analyzing the definition of

'federal agency' under the Federal Tort Claims Act, the Supreme Court

admonished that although 'billions of dollars of federal money are spent each

year on projects performed by people and institutions which contract with the

Government' and 'the Government may fix specific and precise conditions to

implement federal objectives,' such contracts and regulations do not transform private actors into federal agencies.") (quoting *Orleans,* 425 U.S. at 815-16). Under these standards, Defendant, "serving as a fiscal agent and a participant in a heavily regulated federal program" whose day-to-day operations are run by private employees paid by Defendant, is clearly not transformed into a federal agency subject to the EAJA.  *See Dwyer*, 565 F.3d at 289.

The undersigned finds the reasoning in *Arevalo* unavailing as it does not support a departure from the common-sense holding that WYO companies, like Defendant, are not federal agencies under the EAJA.[10]  The undersigned is likewise unpersuaded by Plaintiffs' arguments, which, while compelling, are also not sufficient to convince this Court that by participating in the NFIP program, WYO companies are transformed into federal agencies subject to the EAJA, or that Congress, expressly or impliedly, intended for the EAJA to apply in suits against private WYO companies.  If Congress intended the EAJA to apply to private entities contracting with the federal government, such as a WYO carrier, it could have specified as such.  *See BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) ("The preeminent canon of statutory interpretation requires us to

---

[10] The undersigned has also considered Plaintiffs' supplemental authority submitted on February 10, 2020.  (*See* Doc. 28.) However, the opinions cited and attached, Doc. 18 in *Morrisey v. Wright National Flood Insurance Company*, Case No. 5:19-cv-183-RH-MJF (N.D. Fla., Oct. 27, 2019), and Doc. 11 in *Julian v. American Bankers Insurance Company of Florida*, Case No. 5:19-cv-450-RH-MJF (N.D. Fla., Jan. 14, 2020), followed the reasoning in *Arevalo*.  (*Id.*)  As such, the undersigned finds these succinct opinions to be equally unpersuasive.

'presume that the legislature says in a statute what it means and means in a statute what it says there.'") (alterations omitted) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)).

Additionally, Plaintiffs' argument that the line between a WYO carrier and FEMA is so thin that it is inconsequential for purposes of the EAJA is also unpersuasive.  Neither Plaintiffs nor the *Arevalo* court acknowledge that in *Newton*, the Eleventh Circuit observed that "the line between a WYO company and FEMA is too thin to matter *for the purposes of federal immunities such as the no-interest rule.*"  *Newton*, 245 F.3d at 1311.  The undersigned agrees with Defendant that in *Newton*, the Eleventh Circuit "did <u>not</u> conclude that either FEMA or the United States were 'the real party in interest' such that WYO companies should be treated synonymously with federal agencies."  (Doc. 10 at 11 (emphasis in the original).)  As some courts have recognized, WYO companies are indeed independent from FEMA:

> [A]lthough WYO carriers are "place-holder[s]" for FEMA in many respects, . . .  they are independent in other respects. . . . FEMA regulations provide that WYO carriers (1) "arrange for the adjustment, settlement, payment and defense of all claims arising from policies of flood insurance [they] issue[ ]," (2) use their "own customary standards, staff and independent contractor resources," and (3) "are solely responsible for their obligations to their insured . . . such that the Federal Government is not a proper party defendant in any lawsuit arising out of such policies." 44 C.F.R. § 62.23 (d), (e), (g).
>
> Also, WYO carriers are fiscal agents, but not general agents, of the United States. *Id.* § 62.23 (g); *cf. Dwyer v. Fidelity Nat. Prop. Cas. Ins. Co.*, 565 F.3d 284, 289 (5th Cir. 2009).

*Ekhlassi*, 926 F.3d 130, 140 (5th Cir. 2019) (Haynes, J., concurring).  As the

concurring opinion in *Ekhlassi* aptly observed, "[i]t is one thing to have a

cooperative relationship with a private insurance carrier, quite another to

transform that carrier into a governmental entity. We should not assume

Congress made that transformation *sub silentio.*"  *Id.*

Moreover, the undersigned finds support for adhering to a plain reading of

the EAJA in *Ardestani*.  502 U.S. at 137-38.  In *Ardestani*, the Supreme Court

rejected the argument that the EAJA applied to deportation proceedings,

reasoning as follows:

> Finally, we consider Ardestani's argument that a *functional
> interpretation* of the EAJA is necessary in order to further the
> legislative goals underlying the statute. The clearly stated objective
> of the EAJA is to eliminate financial disincentives for those who
> would defend against unjustified governmental action and thereby to
> deter the unreasonable exercise of Government authority. . . .

> We have no doubt that the broad purposes of the EAJA would be
> served by making the statute applicable to deportation proceedings.
> We are mindful that the complexity of immigration procedures, and
> the enormity of the interests at stake, make legal representation in
> deportation proceedings especially important. We acknowledge that
> Ardestani has been forced to shoulder the financial and emotional
> burdens of a deportation hearing in which the position of the INS
> was determined not to be substantially justified. *But we cannot
> extend the EAJA to administrative deportation proceedings when the
> plain language of the statute, coupled with the strict construction of
> waivers of sovereign immunity, constrain us to do otherwise.*

*Id.* (citations omitted) (emphasis added).  Furthermore, the Supreme Court noted

that Congress had expanded the definition of "adversary adjudications" twice "to

include proceedings previously considered to be outside the EAJA's coverage."[11] *Id.* at 138.  Thus, the Supreme Court concluded: "In this case as well, it is the province of Congress, not this Court, to decide whether to bring administrative deportation proceedings within the scope of the statute."  *Id.*

Similarly, in this case, a plain reading of the EAJA does not support a finding that Congress intended the EAJA to apply to private entities, such as WYO companies.  To the extent Plaintiffs appear to ask this Court to apply a functional interpretation of the statutes and regulations at issue, in light of the Supreme Court's guidance in *Ardestani*, the Court should not interpret the EAJA to apply to private WYO companies "when the plain language of the statute, coupled with strict construction of waivers of sovereign immunity, constrain [the Court] to do otherwise."  *See id.* at 138.  As recognized in *Dwyer*, it is not for this Court to "second-guess Congress's policy decisions."  565 F.3d at 290 (internal citation omitted).  Rather, it is for Congress to decide whether to bring private WYO companies within the scope of the EAJA.  *See Ardestani*, 502 U.S. at 137.

## V.    Conclusion

The undersigned finds that attorneys' fees, costs, and expenses under the EAJA are not recoverable here as a matter of law.  Therefore, the undersigned

---

[11]  Notably, in 1985, "Congress legislatively overruled *Fidelity Construction Co. v. United States,* 700 F.2d 1379 (CA Fed.), cert. denied, 464 U.S. 826 [ ] (1983), by amending § 504(b)(1)(C) to add certain proceedings under the Contract Disputes Act of 1978. . . . In 1986, Congress amended the same section to add proceedings under the Program Fraud Civil Remedies Act of 1986."  *Ardestani*, 502 U.S. at 138.

respectfully recommends that Plaintiffs' prayer for such relief, pursuant to the

EAJA, be stricken pursuant to Fed.R.Civ.P. 12(f).

Accordingly, it is respectfully **RECOMMENDED** that:

The Motion (**Doc. 10**) be **GRANTED**.

**DONE AND ENTERED** in Jacksonville, Florida, on February 12, 2020.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record